Stephen K. McElroy, Esq. (SBN 129239)
Kim Katen Savo, Esq. (SBN 223197)
**MCELROY PARRIS TRIAL LAWYERS**
407 Bryant Circle, Suite F,
Ojai, CA 93023
Tel:  (805) 272-4001
Fax: (805) 719-6858
Email: service@mcleroyparris.com

Attorneys for Plaintiffs,
OMAR MORAN
and SANDY MORAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR MORAN; SANDY MORAN,<br><br>Plaintiffs,<br><br>v.<br><br>ALTEC INDUSTRIES INC., an Alabama Corporation, GGB NORTH AMERICA, and DOES 2 through 25, inclusive,<br><br>Defendants. | CASE NO.:  1:23-cv-01236-KES-CDB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. **STRICT PRODUCTS LIABILITY: MANUFACTURING DEFECT**<br>2. **STRICT PRODUCTS LIABILITY: DESIGN DEFECT**<br>3. **STRICT PRODUCTS LIABILITY: DESIGN DEFECT – RISK-BENEFIT**<br>4. **STRICT PRODUCTS LIABILITY: FAILURE TO WARN**<br>5. **NEGLIGENCE**<br>6. **LOSS OF CONSORTIUM** |

COMES NOW, Plaintiffs, Omar Moran, an Individual, and Sandy Moran, an Individual, for Causes of Action against Defendants, ALTEC INDUSTRIES INC. and GGB NORTH AMERICA, and DOES 2 through 25, inclusive, and each of them, complain and allege as follows:

**PARTIES**

1. Plaintiff, Omar Moran, is a resident of the State of California, domiciled in Bakersfield, California in Kern County.

2. Plaintiff, Sandy Moran, is a resident of the State of California, domiciled in

Bakersfield, California in Kern County, in the Eastern District of California.

3. At all times relevant to the allegations in the First Amended Complaint, Omar Moran and Sandy Moran were, and continue to be, husband and wife.

4. Defendant Altec Industries, Inc. (hereinafter "Altec"), is an Alabama corporation with its principal place of business at 210 Inverness Center Drive, Birmingham, AL 35242-4834, in Shelby County. At all times relevant to the allegations in the First Amended Complaint, Altec designed, manufactured, assembled, distributed, and serviced aerial devices in the form of articulating boom lifts mounted to truck chassis, including the 2008 LRV-55 unit Mr. Moran was operating on July 13, 2021.

5. Defendant GGB North America, doing business as GGB, is a New Jersey corporation with its principal place of business at 700 Mid Atlantic Parkway, Thorofare, New Jersey 08086, in Gloucester County, in the District of New Jersey. At all times relevant to the allegations in the First Amended Complaint, GGB was engaged in New Jersey in the designing, manufacturing, marketing, and distributing of self-lubricating fiberglass reinforced bearings for use in industrial applications, including aerial devices such as the Altec 2008 LRV-55, and specifically the unit Mr. Moran was operating on July 13, 2021.

6. The true names and capacities, whether individual, plural, corporate, partnership associate, or otherwise, of DOES 2 thorough 25, inclusive, are unknown to plaintiffs who therefor sue said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants is unknown to plaintiff. Plaintiffs are informed and believe, and thereupon allege, that each of the defendants designated herein as a DOE was and is negligent or is in some other actionable manner, responsible for the events and happening hereinafter referred to. Defendants thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to plaintiff. Plaintiffs will hereinafter seek leave of the Court to amend this complaint to show that Defendants' true names and capacities after the same have been ascertained.

///

**JURISDICTION AND VENUE**

**FIRST AMENDED COMPLAINT**

7. On July 11, 2023, Plaintiffs filed a Complaint alleging products liability, negligence, and loss of consortium against Altec and Does 1-25. On August 18, 2023, Defendant Altec answered the Complaint. Also on August 18, 2023, Defendant Altec filed a Notice of Removal in the United States District Court for the Eastern District of California. The Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1369(a)(1)-(2), (c)(1)-(2). The addition of GGB, a New Jersey corporation, as a defendant maintains diversity jurisdiction.

8. Venue is proper in the Eastern District of California in the Bakersfield division insofar as the alleged incident giving rise to Plaintiffs' harms occurred in and Plaintiffs are domiciled in Bakersfield, Kern County, California pursuant to 28 U.S.C. §1391(b)-(c).

**INTRODUCTORY ALLEGATIONS**

9. Altec's LRV-55 series aerial device truck utilizes Altec's patented "walking link drive system" to elevate the upper boom and its attached bucket or platform, commonly referred to as a "cherry picker" or "man lift."

10. The walking link chain uses chrome-coated steel pivot pins secured in self-lubricating bearings to connect the links of the walking link chain.

11. Self-lubricating bearings do not use additional lubrication. When a load is applied to the pin, some of the lubricant is transferred from the bearing to the pin to minimize friction.

12. Altec expressly represents to consumers that the bearings are "long life," requiring "virtually no maintenance," and replacement of these bearings because of wear is unnecessary.

13. Altec's 1994 design specifications for the LRV-55 aerial device truck includes one for the bearings used in the male walking links in the upper boom drive system. The design drawings specify a GM2428-24 self-lubricating fiberglass reinforced bearing (hereinafter "GGB bearing") and name Garlock as the only approved vendor.

14. In or around 2004, Garlock changed its name to GGB.

15. On or about April 28, 2008, at the request of its customer Asplundh Tree Expert, Co., Altec Inc. began assembly of an LRV-55 aerial device truck with an articulating boom lift, identified with VIN 1GDL7C1G98F411956 and Unit Serial Number 0408CV7470. Hereinafter, this specific vehicle will be identified by "LRV-55".

**FIRST AMENDED COMPLAINT**

16. Garlock/GGB supplied the self-lubricating bearings used in the assembly of the LRV-55.

17. On or about October 21, 2008, Altec placed in service the LRV-55 by delivering it to its customer, Asplundh Tree Expert, Co.

18. On or about August 31, 2018, Western Tree Care Corp purchased the LRV-55 from LKQ Heavy Truck, a used heavy equipment dealership, in Stockton, California.

19. Western Tree Care Corp provides tree trimming and other arborist services to its customers.

20. On or about July 13, 2021, Western Tree Care Corp sent employees, including Plaintiff Omar Moran, to provide tree trimming services at a school in Wasco, Kern County, California.

21. While performing tree trimming services, Mr. Moran used the LRV-55 articulating boom to lift himself in its bucket to reach treetops approximately fifty feet in height. Mr. Moran was using the articulating boom truck in a foreseeable manner that was consistent with its intended use.

22. After lowering himself to refuel a chainsaw, Mr. Moran reraised the boom to approximately fifty feet above the ground.

23. Suddenly, a pivot pin in the first walking link of the upper boom chain broke, causing the bucket and Mr. Moran to free fall fifty feet.

24. Inspection of the walking links after Mr. Moran's fall revealed that half of the GGB bearing that had once secured the broken pin was worn away and the remainder was rough with frayed fibers. Without the bearing, the steel link and the pivot pin were in direct contact.

25. As a result of the fall, Mr. Moran sustained fractures to his cervical, thoracic, and lumbar spine and both of his scapulae, two broken ribs, a partially collapsed lung, bilateral broken humerus bones, epidural hematoma, as well as a head injury. Emergency responders airlifted him to the nearest trauma center.

26. The following day, July 14, 2021, a neurosurgeon performed an urgent thoracic spine fusion, including implantation of rods and screws, and two lumbar laminectomies.

**FIRST AMENDED COMPLAINT**

27. On July 26, 2021, a neurosurgeon performed cervical spine surgery, including a bone graft, and implantation of rods and screws.

28. On November 11, 2021, a neurosurgeon performed another cervical spine surgery.

29. In June 2022, Mr. Moran was hospitalized for six days and required surgery to remove the implanted devices from his thoracic spine.

30. Mr. Moran also suffers from the sequalae of a traumatic brain injury, including oculomotor abnormalities, vestibular dysfunction, posttraumatic stress disorder, depression, and insomnia, among other things.

31. Before the broken pivot pin caused Mr. Moran to fall and suffer grievous injuries, he was a strong, able-bodied head of household, who provided for his family financially and emotionally. As a father, he was actively engaged in physical activities with his children. He and his wife, Plaintiff Sandy Moran, had a mutually satisfying intimate relationship, and were best-friends, companions, and co-workers.

32. Since the fall, Mr. Moran suffers from an anatomically deformed spine and severe chronic pain. He avoids performing any physical work. He struggles to put on his own shoes. It hurts to carry a six-pack of soda. He has stopped picking or carrying his special needs 7-year-old son. The intimacy and companionship he had with his wife, Plaintiff Sandy Moran, has suffered.

33. Mr. Moran has and will continue to suffer from emotional distress, loss of self-esteem, humiliation, psychological injury, and loss of enjoyment of life.

## CLAIMS FOR RELIEF

### CLAIM ONE – STRICT LIABILITY – MANUFACTURING DEFECT

By Plaintiff Omar Moran

(Against All Defendants)

34. Plaintiffs incorporate by reference all other paragraphs of this First Amended Complaint as if fully set forth herein.

35. Altec, by and through its officers, directors, employees, and/or managing agents, designed, assembled, manufactured, distributed, and serviced the LRV-55.

36. GGB, by and through its officers, directors, employees, and/or managing agents,

designed, manufactured, distributed, and supplied the GGB bearing to Altec for use in the LRV-55.

37. The LRV-55 contained a manufacturing defect when it left Altec's possession. Specifically, the "long life" GGB bearing differed from Altec's intended result by wearing away and causing the pivot pin to break, and did not conform with the bearing or pin's intended design.

38. The GGB bearing used by Altec in the first male walking link in the LRV-55 contained a manufacturing defect when it left GGB's possession. The failure of the GGB bearing in the first male walking link differed from GGB's intended result and did not conform with the bearing's intended design.

39. The design of the GGB bearing participated substantially in creating a harmful combined use of the bearing and the walking link pivot pin in the LRV-55.

40. GGB received a direct financial benefit from the manufacturing and sale of the GGB bearing to Altec, it played an integral role in bringing the LRV-55 to the consumer market, and it had control over, or the substantial ability to influence, the manufacturing process.

41. Mr. Moran was harmed because of these defects, which were substantial factors in causing his serious injuries.

42. Mr. Moran used the LRV-55, including the GGB bearing, in its intended and reasonably foreseeable manner.

43. Mr. Moran is in the class of persons that the Defendants should have reasonably foreseen as being subject to the life-threatening harm caused by a manufacturing defect in the LRV-55.

**CLAIM TWO – STRICT LIABIILTY – DESIGN DEFECT – CONSUMER EXPECTATION**

By Plaintiff Omar Moran

(Against All Defendants)

44. Plaintiffs incorporate by reference all other paragraphs of this First Amended Complaint as if fully set forth herein.

45. Altec designed, assembled, manufactured, distributed, and serviced the LRV-55.

46. GGB designed, manufactured, distributed, and supplied the GGB bearing to Altec.

47. The boom lift, including the GGB bearing, did not perform as safely as a reasonable ordinary user would have expected it to perform when used or misused in an intended and reasonably foreseeable way.

48. Mr. Moran was harmed.

49. The GGB bearing and the boom lift's failure to perform safely were substantial factors in causing Mr. Moran's harm.

50. Mr. Moran was injured while using the articulating boom lift, including the GGB bearing, in its intended and reasonably foreseeable manner.

**CLAIM THREE – STRICT LIABIILTY – DESIGN DEFECT – RISK-BENEFIT**

By Plaintiff Omar Moran

(Against Defendant Altec)

51. Plaintiffs incorporate by reference all other paragraphs of this First Amended Complaint as if fully set forth herein.

52. Altec designed, assembled, manufactured, distributed, and serviced the LRV-55.

53. Mr. Moran was harmed.

54. The articulating boom lift's design was a substantial factor in causing harm to Mr. Moran.

55. Mr. Moran was injured while using the articulating boom lift in its intended and reasonably foreseeable manner.

56. The inherent risks of the design – the lack of a bearing wear indicator, a warning about bearing wear, or tool for inspecting for bearing wear – could lead to serious bodily injury or death and outweighed the benefits.

57. A safer alternative design was mechanically feasible and cost effective.

///

///

///

**CLAIM FOUR – STRICT LIABILITY – FAILURE TO WARN**

**FIRST AMENDED COMPLAINT**

By Plaintiff Omar Moran

(Against Defendant Altec)

58. Plaintiffs incorporate by reference all other paragraphs of this First Amended Complaint as if fully set forth herein.

59. Altec designed, assembled, manufactured, distributed, and serviced the LRV-55.

60. Altec knew when it put the LRV-55 in service that the projected lifespan of the GGB bearing in the upper boom drive system walking link chain was no more than eight to ten years.

61. Altec knew that completely worn bearings presented a substantial danger of life-threatening injuries when the upper boom drive system was used or misused in an intended or reasonably foreseeable way.

62. A reasonable ordinary user would not have recognized the potential risk that the bearings were worn.

63. Altec failed to adequately warn or instruct of the potential risks of bearing wear, where directions or warnings were reasonably required to prevent the use of the LRV-55 upper boom lift from becoming unreasonably dangerous.

64. Mr. Moran was harmed.

65. The lack of sufficient instructions or warnings was a substantial factor in causing Mr. Moran's harm.

<b><u>CLAIM FIVE – NEGLIGENCE</u></b>

By Plaintiff Omar Moran

(Against All Defendants)

66. Plaintiffs incorporate by reference all other paragraphs of this First Amended Complaint as if fully set forth herein.

67. Altec designed, assembled, manufactured, distributed, and serviced the LRV-55.

68. GGB designed, manufactured, distributed, and supplied the GGB bearing to Altec.

69. Defendants were negligent in designing, assembling, manufacturing, distributing, supplying, and servicing the LRV-55.

**FIRST AMENDED COMPLAINT**

70. Defendants failed to use the amount of care in designing, assembling, manufacturing, distributing, supplying, and servicing the LRV-55 that a reasonably careful designer, assembler, manufacturer, supplier, and servicer would use in similar circumstances to avoid exposing users to a foreseeable risk of harm.

71. Defendants knew or should have known that pivot pin bearing wear in the upper boom walking link chain of the LRV-55 was dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner and knew or should have known about the likelihood and severity of potential harm from wear of pivot pin bearings and taken measures to reduce or avoid the harm.

72. Defendants knew or reasonably should have known that users would not realize the danger of worn pivot pin bearings.

73. Defendants failed to adequately warn of the danger or adequately instruct about the safety related to the pivot pin bearings in the upper boom walking link chain of the LRV-55.

74. A reasonable designer, assembler, manufacturer, supplier, and servicer under the same or similar circumstances would have warned of the danger or instructed on the safe use of the LRV-55.

75. Mr. Moran was harmed.

76. Defendants' negligence, including their failure to warn or instruct, was a substantial factor in causing Mr. Moran's harm.

### CLAIM SIX – LOSS OF CONSORTIUM

By Plaintiff Sandy Moran

Against All Defendants

77. Plaintiffs incorporate by reference all other paragraphs of this First Amended Complaint as if fully set forth herein.

78. At all times relevant to the First Amended Complaint, plaintiffs Omar and Sandy Moran were and continue to be lawfully married.

79. As a direct and proximate result of the injuries to Mr. Moran caused by Defendants, Plaintiff Sandy Moran has been and will continue in the future to be deprived of his love,

companionship, affection, comfort, care, assistance, protection, society, and moral support, and the enjoyment of sexual relations

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray to this Court for judgment in their favor and against Defendants, awarding Plaintiffs their compensatory damages in an amount to be established at trial.

### JURY DEMAND

Plaintiffs, by and through their counsel, pursuant to Federal Rule of Civil Procedure 38, demand a jury trial.

DATED: October 11, 2024            MCELROY PARRIS TRIAL LAWYERS


By:     /S/ Kim Savo
        STEPHEN K. MCELROY, Esq.
        KIM KATEN SAVO, Esq.
        Attorney for Plaintiffs,
        OMAR MORAN and SANDY MORAN

# **CERTIFICATE OF SERVICE**

*Omar Moran, et al. vs. Altec Industries, et al.*
Case No. 1:23-CV-01236-KES-CDB

I hereby certify that on October 11, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**FIRST AMENDED COMPLAINT FOR DAMAGES, SUMMONS IN A CIVIL ACTION, and CIVIL CASE COVER SHEET**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, that I am employed in the office of the member of the bar of this court at whose direction the service was made.

Executed on October 11, 2024 at Ojai, California.



/S/
CINDY BALANZA