1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10

11   OMAR MORAN, et al.,                    No.  1:23-cv-01236-KES-CDB

12                    Plaintiffs,           ORDER GRANTING GGB LLC'S MOTION
                                            TO DISMISS
13        v.

14   ALTEC INDUSTRIES, et al.,
                                            (Doc. 27)
15                    Defendant.

16

17        GGB LLC[1] ("GGB") moves for dismissal from this action for lack of personal

18   jurisdiction.  Motion to Dismiss ("Motion"), Doc. 27.  This matter is suitable for resolution

19   without a hearing pursuant to Local Rule 230(g).  The Court has considered the parties' briefs

20   and, for the reasons explained below, will grant GGB's motion to dismiss.

21   **I.    BACKGROUND**

22        Plaintiff Omar Moran was injured after falling from an Altec LRV-55 articulating boom

23   lift while performing tree trimming services.  First Amended Complaint ("FAC"), Doc. 23 ¶ 21-

24   25.  Altec LRV-55 uses a "walking link drive system" to elevate the upper boom and its attached

25   bucket or platform.  *Id.*  ¶ 9.  The walking link chain uses self-lubricating bearings to connect the

26

27   _____
     [1] Defendant GGB LLC indicates that it was incorrectly named in the first amended complaint as
     "GBB North America."  Motion, Doc. 27 at 2.  Plaintiffs do not dispute that GGB LLC is the
28   intended defendant in the first amended complaint.

                                            1

1  links of the walking link chain. *Id.* at 10. GGB, formerly known as Garlock, supplied the self-

2  lubricating bearings used in the assembly of the LRV-55. *Id.* ¶ 16. Altec Industries ("Altec")

3  delivered the LRV-55 to its customer, Asplundh Tree Expert, Co. in 2008. In 2018, Western Tree

4  Care Corp. purchased the LRV-55 from its then owner, LKQ Heavy Truck. Plaintiff Omar

5  Moran was employed by Western Tree Care when he was injured.

6          On July 11, 2023, Omar Moran and Sandy Moran filed this action against Altec in Kern

7  County Superior Court. Notice of Removal, Doc. 1. Altec removed this action to this Court on

8  August 18, 2023. *Id.* After conducting discovery and receiving leave to file an amended

9  complaint, plaintiffs filed the FAC naming GGB as an additional defendant. Order, Doc. 22;

10  FAC, Doc. 23. In their First Amended Complaint, plaintiffs allege claims for: (1) Strict Products

11  Liability: Manufacturing Defect; (2) Strict Products Liability: Design Defect; (3) Strict Products

12  Liability: Design Defect – Risk-Benefit; (4) Strict Products Liability: Failure to Warn; (5)

13  Negligence; (6) Loss of Consortium. FAC, Doc. 23.

14          On November 25, 2024, GGB moved to dismiss pursuant to Federal Rule of Civil

15  Procedure 12(b)(2) for lack of personal jurisdiction. Doc. 27. Plaintiffs oppose the motion, and

16  request, in the alternative, jurisdictional discovery. Doc. 31. GGB filed a reply.

17  **II.    LEGAL STANDARD**

18          A party may move for dismissal for lack of personal jurisdiction under Federal Rule of

19  Civil Procedure 12(b)(2). Plaintiffs have the burden of establishing that the Court has personal

20  jurisdiction over defendant. *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th

21  Cir. 2022). Where the Court does not hold an evidentiary hearing and the motion is based on the

22  written materials, plaintiffs need only establish a prima facie showing of jurisdictional facts to

23  withstand the motion to dismiss. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023).

24  "Uncontroverted allegations in the complaint are taken as true, but in the face of a contradictory

25  affidavit, the 'plaintiff cannot simply rest on the bare allegations of its complaint.'" *Id.* (quoting

26  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)).

27          "A federal district court sitting in diversity has in personam jurisdiction over a defendant

28  to the extent the forum state's law constitutionally provides." *Id.* (internal quotation marks and

1    citation omitted). "California's long-arm statute allows the exercise of personal jurisdiction to the

2    full extent permissible under the U.S. Constitution," and is therefore coextensive with federal due

3    process requirements. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal quotation

4    marks and citation omitted). Due process requires nonresident defendants to "have certain

5    minimum contacts" with the forum state such that the maintenance of the suit does not offend

6    traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citation

7    omitted).

8    **III.    DISCUSSION**

9        GGB moves to be dismissed from this action for lack of personal jurisdiction, arguing that

10   there is no basis for the Court to exercise general or specific jurisdiction over it. *See* Motion,

11   Doc. 27. Plaintiffs argue that GGB consented to personal jurisdiction in California and, even if

12   there was no consent, there is general jurisdiction over GGB in California. *See* Opposition to

13   Motion ("Opposition"), Doc. 31. In the alternative, plaintiffs request jurisdictional discovery. *Id.*

14   at 9.

15       **A.   Personal Jurisdiction**

16           **1.   Consent to Personal Jurisdiction**

17        Plaintiffs argue that personal jurisdiction exists because GGB previously consented to

18   personal jurisdiction in California by filing a breach of contract suit in Orange County Superior

19   Court in February 2011 against Alliance Aerospace. *Id.* at 5. According to plaintiffs, GGB

20   represented in that case that it was authorized to and did conduct business in California, and GGB

21   sought the benefit of California law and its courts to enforce its rights. *Id.* at 8. However, those

22   actions are insufficient to establish that GGB consented to personal jurisdiction in California in

23   the present case.

24        As addressed below, GGB is not registered to do business in California. Even if it were,

25   "California courts have concluded that the mere registration to do business in California and

26   appointment of an agent for service of process cannot be construed as constituting broad consent

27   to personal jurisdiction within the state." *Carter v. Round Point Mortg.*, No. EDCV 20-240 JGB

28   (SHKX), 2020 WL 6032653, at *3 (C.D. Cal. Aug. 4, 2020). As such, a representation in 2011

1    that GGB was authorized to and did conduct business in California is insufficient to establish that

2    GGB consented to personal jurisdiction in California in the present case. *See Bristol-Myers*

3    *Squibb Co. v. Superior Court*, 1 Cal. 5th 783, 798 (2016), *rev'd on other grounds sub nom.*

4    *Bristol-Myers Squibb Co.,* 582 U.S. 255 (2017) (internal quotation marks and citation omitted)

5    (the "designation of an agent for service of process and qualification to do business in California

6    alone" are insufficient to permit general jurisdiction absent other transactions necessary to

7    establish personal jurisdiction).

8            The filing of an action in a California Superior Court that is unrelated to the current action

9    is also insufficient to establish consent. In *Dow Chemical Co. v. Calderon*, 422 F.3d 827, 835-36

10    (9th Cir. 2005), the Ninth Circuit held that an independent affirmative decision to seek relief in

11    the forum courts was needed to constitute consent and that defendants' decision to defend a

12    separate suit did not mean that the defendants consented to personal jurisdiction in the later *Dow*

13    *Chemical* action. Similarly, in *Fidelity Nat. Financial, Inc. v. Friedman*, CIV 03-1222 PHX

14    RCB, 2010 WL 960420 (D. Ariz. Mar. 15, 2010), the court held that the defendant trust's prior

15    petition in state court did not establish that it had consented to personal jurisdiction in a

16    subsequent action. *Fidelity*, 2010 WL 960420 at *4. The *Fidelity* court concluded that the prior

17    petition sought relief "wholly unrelated to [the] transaction or occurrence" at issue in the later

18    case, and that, based on the rationale of *Dow Chemical*, the prior petition did not establish that the

19    defendant trust had consented to personal jurisdiction in the subsequent federal court action. *Id.*

20    The *Fidelity* court's reasoning is persuasive and warrants the same result here.

21            Plaintiffs argue that once a plaintiff asks the court to enforce a state's law, there is no

22    "logical basis to later allow it to start from scratch as if it had never consented to the forum's

23    jurisdiction." Opposition, Doc. 31 at 10. However, district courts have rejected plaintiffs'

24    argument that a defendant's filing of a prior, unrelated lawsuit in the forum, like GGB's 2011

25    breach of contract lawsuit against Alliance Aerospace, is an affirmative action that constitutes

26    consent to personal jurisdiction in a subsequently filed case. *Brooks v. Y.Y.G.M. SA*, No. 2:21-

27    CV-00078-JAM-CKD, 2021 WL 5450232, at *4 (E.D. Cal. Nov. 22, 2021) (rejecting plaintiff's

28    proposition "that the mere act of filing a complaint can support a finding of specific personal

jurisdiction in an unrelated case"); *Clinton v. Boladian*, No. CV 11-10062-R, at *1 (C.D. Cal. May 2, 2013) (holding there was no general jurisdiction where defendant filed a prior lawsuit on a different distinct issue in the same forum); *Stage Nine Design, LLC v. Rock-It Cargo USA, LLC*, No. 2:21-CV-00722-WBS-AC, 2021 WL 3565310, at *4 (E.D. Cal. Aug. 12, 2021) (defendant's involvement in six cases in California courts as a plaintiff, and one case in California as a defendant, in unrelated actions over the past twelve years was insufficient to support general jurisdiction). The Court is unpersuaded that it should reach a different conclusion here where GGB filed one unrelated lawsuit in 2011. *See AM Trust v. UBS AG*, 681 Fed. Appx. 587, 589 (9th Cir. 2017) (affirming dismissal for lack of personal jurisdiction and noting plaintiff "cited nothing to support its contention that any consent [defendant] may have given to personal jurisdiction in California in other cases would amount to consent to personal jurisdiction in this case."). Therefore, the Court finds that GGB has not consented to personal jurisdiction.

### 2. General Jurisdiction

Plaintiffs also argue that GGB has sufficient contacts with California to warrant general jurisdiction. Opposition, Doc. 31 at 5. "A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render [them] essentially at home in the forum State.'" *LNS Enterprises*, 22 F.4th 859 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). A corporation will primarily be "at home" for the purposes of general jurisdiction in two paradigmatic forums: its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. General jurisdiction is not limited to these two forums but will only be available elsewhere in the "exceptional case" where a corporation's affiliations with a forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

GGB is incorporated in Delaware with a principal place of business in New Jersey and is not registered to do business in California. Motion, Doc. 27 at 7; Decl. of Matthew M. Steiner in support of Motion, Doc. 27-1 ¶ 3. Plaintiffs argue that the Court has general jurisdiction over GGB because GGB supplies all major manufacturers of commercial and military aircraft with

1   bearings, including manufacturers with a large presence in California; Alstom is a representative

2   customer who provides many services to California; GGB has sold bearings in California since at

3   least 2011; GGB targets customers in California; and GGB sells its bearings directly through a

4   webstore and through an extensive network of distributors in California.  Opposition, Doc. 31 at

5   11-13.  However, these contacts are insufficient to render GGB essentially "at home" in

6   California.  It is not enough that a corporation "engages in a substantial, continuous, and

7   systematic course of business" in a state – general jurisdiction requires that the defendant be

8   essentially at home.  *Martinez*, 764 F.3d at 1070.

9        Conducting regular business in California is insufficient to render GGB "at home" in the

10   state.  *See Daimler,* 571 U.S. at 139 n.20 ("A corporation that operates in many places can

11   scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with

12   'doing business' tests framed before specific jurisdiction evolved in the United States.").

13   Plaintiffs do not contend that GGB has offices, operations, or employees in California, only that

14   its bearings are sold throughout California and that it targets customers in California.  These

15   contacts are not so substantial and of such nature that they render GGB subject to general

16   jurisdiction in California.  *See Martinez*, 764 F.3d at 1070 (no general jurisdiction where foreign

17   corporation did not have its principal place of business, offices, staff, or other physical presence

18   in California); *see also Farrell v. New Millennium Concepts, Ltd.*, No. 2:21-CV-01691-JAM-

19   JPD, 2022 WL 956882, at *2 (E.D. Cal. Mar. 30, 2022) (holding that there was no general

20   jurisdiction where defendant was a Texas limited partnership with a Texas principal place of

21   business and defendant did not have offices, operations, or employees in California).

22   Accordingly, based on the present record, the Court concludes it lacks general personal

23   jurisdiction over GGB.

24        **3.   Specific Jurisdiction**

25        GGB argues there is no specific jurisdiction over GGB in California.  In its reply, GGB

26   argues that, because plaintiffs failed to address specific jurisdiction in their opposition, plaintiffs

27   have conceded that there is no specific jurisdiction.  Reply to Motion, Doc. 32 at 5.  Courts

28   construe a party's failure to address an argument by the opposing party in their briefs as

1   abandonment of that claim.  *See Dilworth v. Cnty. of San Bernardino*, No. EDCV 23-1879 JGB

2   (SHKX), 2024 WL 2107731, at *7 (C.D. Cal. Mar. 28, 2024) (plaintiff concedes an argument by

3   failing to address or oppose the moving party's argument); *see also Conservation Force v.*

4   *Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense

5   for a claim in opposition, the claim is deemed waived.").  Consequently, the Court finds that

6   plaintiffs abandoned any argument about specific personal jurisdiction and that plaintiffs have

7   therefore failed to establish specific jurisdiction over GGB in this action.  *See CRBN Pickleball*

8   *LLC v. Pickle*, No. 8:24-CV-00625-JVS-JDE, 2024 WL 3914670, at *3 (C.D. Cal. July 18, 2024)

9   (holding there was no general jurisdiction over defendant because plaintiff conceded the

10  argument by not countering or addressing general jurisdiction).

11      **B.  <u>Request for Jurisdictional Discovery</u>**

12          In the alternative, plaintiffs seek jurisdictional discovery to determine whether GGB is an

13  alter ego of its sole member, Timken, and to determine whether there are sufficient contacts to

14  yield general jurisdiction over GGB.  Opposition, Doc. 31 at 5.  Jurisdictional discovery is

15  appropriate where "pertinent facts bearing on the question of jurisdiction are controverted or

16  where a more satisfactory showing of the facts is necessary."  *Boschetto v. Hansing*, 539 F.3d

17  1011, 1020 (9th Cir. 2008).  However, "a mere hunch **t**hat [discovery] might yield jurisdictionally

18  relevant facts" or "bare allegations in the face of specific denials" are insufficient reasons for the

19  Court to permit jurisdictional discovery.  *LNS Enterprises*, 22 F.4th at 864–65 (quotation marks

20  and internal citation omitted).

21          Plaintiffs have not met their burden of establishing that jurisdictional discovery is

22  warranted.  Plaintiffs have not explained how limited discovery would likely reveal continuous

23  and systematic contacts needed for GGB to be essentially at home in California.  Even assuming

24  GGB knowingly provided products for Alstom to use in California, that is not sufficient to

25  support general jurisdiction.  Plaintiffs argue that *Ohio Sec. Ins. Co. v. AGCO Corp.*, No. CV-23-

26  04-GF-BMM, 2024 WL 2781912 (D. Mont. May 30, 2024), supports their request for

27  jurisdictional discovery.  However, the *Ohio Sec. Ins.* court permitted jurisdictional discovery for

28  plaintiffs to ascertain whether there was *specific* jurisdiction and is therefore inapposite.  *See Ohio*

1   *Sec. Ins. Co. v. AGCO Corp.*, No. 4:23-cv-00004-BMM, Doc. 19 (D. Mont. March 12. 2024).

2        Plaintiffs also argue that jurisdictional discovery is needed to determine whether Timken

3   is an alter ego of GGB, and specifically seek to uncover whether GGB provided bearings to the

4   Imperial Irrigation District and whether Timken market, sells, or arranges for expert engineering

5   advice about GGB products in California.  Opposition, Doc. 31 at 15.  However, plaintiffs have

6   not provided any evidence that Timken is an alter ego of GGB.  "The existence of a parent-

7   subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a

8   forum state to another for the purpose of establishing personal jurisdiction."  *Ranza v. Nike, Inc.*,

9   793 F.3d 1059, 1070 (9th Cir. 2015).  "Total ownership and shared management personnel are

10  alone insufficient to establish the requisite level of control" needed to sustain an alter ego theory.

11  *Id.* at 1079.  Plaintiffs provide no evidence that Timken's actions can be attributed to GGB.

12       Plaintiffs have not made a showing that jurisdictional discovery will reveal GGB is an

13  alter ego of Timken or that jurisdictional discovery will help yield general jurisdiction.  *See LNS*

14  *Enterprises*, 22 F.4th at 864–65 (affirming denial of jurisdictional discovery where plaintiffs

15  "sought jurisdictional discovery without providing any affidavit or evidence substantiating their

16  requests or describing with any precision how such discovery could be helpful to the Court, and

17  their request amounted to only a mere hunch.").  Accordingly, plaintiffs request for jurisdictional

18  discovery is denied.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**IV.    CONCLUSION**

As set forth above, the Court lacks personal jurisdiction over GGB in this action.  The Court also denies plaintiffs' request for jurisdictional discovery.

Accordingly, it is ORDERED that:

1. The hearing on the motion to dismiss (Doc. 27) is vacated.

2. GGB's motion to dismiss for lack of personal jurisdiction (Doc. 27) is granted.

3. GGB is dismissed for lack of personal jurisdiction.

IT IS SO ORDERED.

Dated:    February 5, 2025

UNITED STATES DISTRICT JUDGE

9